IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY CORPORAL,

   Plaintiff,

v.

H. CARR,
WARDEN WEBER,
COMMISSIONER HILL,
SECRETARY GREEN,

   Defendants.

Civil Action No.:  DKC-20-534

## MEMORANDUM OPINION

Defendants filed a motion to dismiss or in the alternative for summary judgment in response to Plaintiff Jeffrey Corporal's civil rights complaint.  ECF No. 16.  Plaintiff opposes the motion.  ECF No. 19.  The court deems a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons below, Defendants' motion, construed as one seeking summary judgment, shall be granted.  Also pending are Plaintiff's motions to amend the complaint and for partial summary judgment.  ECF Nos. 20 & 21.  The court grants Plaintiff's motion to amend and denies his motion for partial summary judgment.

### I. BACKGROUND

Plaintiff is a prisoner confined at Western Correctional Institution ("WCI") in Cumberland, Maryland.  Prior to his incarceration, Plaintiff worked as a correctional officer in Baltimore City.  *See Corporal v. Warden*, Civ. Action DKC-20-950 (D. Md. 2020).  Because of his prior employment status, Plaintiff has frequently refused to accept assignments to a cell with a cellmate.  *Id*.

A.	**Complaint Allegations**

On December 3, 2019, Plaintiff was assigned to housing unit ("HU") four, tier C, cell 16 ("4C-16"). Defendant Officer Carr, along with other officers who Plaintiff did not know, escorted another inmate, Joshua Littlewolf, to Plaintiff's cell and ordered Plaintiff to submit to handcuffing through the cell door slot because Mr. Littlewolf was being assigned to Plaintiff's cell. ECF No. 1-2 at 1. Plaintiff states that he preferred to remain housed without a cellmate and "reportedly refused to comply with the order." *Id*. One of the officers told Plaintiff that if he prevented Mr. Littlewolf from moving into the cell with him as his cellmate, Plaintiff would be maced. *Id*. Because Plaintiff "reportedly refused to comply with the order, [Officer] Carr maced [him] unjustifiably through the cell door's opened slot" for approximately five seconds hitting the left side of Plaintiff's face, left eye, and forehead. *Id*. Following deployment of the chemical agent, Officer Carr closed the cell door slot. *Id*. Shortly after being maced, Plaintiff was standing at the sink using a wet cloth to wash away the mace when Officer Carr reopened the cell door slot and deployed additional mace for approximately four seconds. *Id*. Plaintiff was struck by the mace on his face, head, chest, and mouth. *Id*. at 1-2. Plaintiff claims that, as a result of being maced, he experienced a ten-hour long painful burning sensation to the areas of his body that were struck with mace as well as stress and anxiety. *Id*. at 2.

Plaintiff states that "[e]ventually, a correctional lieutenant handcuffed [him] through the cell door's opened slot" and he was escorted to the medical room in HU 4. ECF No. 1-2 at 2. Plaintiff claims that the nurse who examined him did not have a remedy for his injuries. *Id*.

Following the medical examination, Plaintiff was escorted by "several officers" to the "SOH unit" where he was confined in a suicide watch cell for two days. ECF No. 1-2 at 2. During the two days he was confined to the observation cell, Plaintiff was denied clothes and shoes and

given a smock to wear. *Id*. Plaintiff states that the smock he was provided was "so short that [he] could not wrap the smock fully around [his] body from [his] shoulders to [his] feet." *Id*. He was additionally denied other items he describes as "necessities" even though they could not be used to harm himself. *Id*. These necessities included shoes without shoelaces, mail, grievance forms, a washcloth, hygiene products, medical sick call forms, food utensils for eating, and a longer smock that could keep him warm. *Id*. at 2-3. Plaintiff states that, because he was not provided with some of these necessities, he was compelled to sit, walk, and sleep on the hard, cold concrete floor; repeatedly use his "increasingly unsanitary hands" to eat his meals; endure very cold temperatures; and forego any medical treatment for the injuries sustained when he was maced. *Id*. at 3. He explains that because the smock was so small, his legs, back, feet, arms and hands frequently contacted the floor. *Id*.

Plaintiff claims that, as a result of his confinement to the observation cell, he developed sore eyes and frequent headaches from sleep deprivation; additional stress and anxiety; sore feet from walking on the floor; sore arms and back from sleeping on the floor; sore buttocks from sitting on the floor; and a constant cough from the cold temperatures he endured. *Id*.

On December 5, 2019, when Plaintiff was being interviewed for discharge from the suicide observation cell, Dr. Gordon told him that his confinement in that cell had been approved after Defendant Carr reported that Plaintiff attempted to harm himself two days earlier. ECF No. 1-2 at 3-4; ECF No. 1-3 at 2, 4. Plaintiff denies trying to harm himself. *Id*. at 4.

Plaintiff asserts that Officer Carr violated his Eighth Amendment rights when he used excessive force against him and unjustifiably put Plaintiff in a suicide prevention cell. ECF No. 1-2 at 4. He additionally claims that Defendants Weber, Hill, and Green also violated his Eighth Amendment rights due to the conditions he was subjected to during his confinement to the suicide

3

prevention cell because those conditions are the result of policies and procedures they put into place. *Id*. at 2, 4. As relief, Plaintiff seeks monetary damages of one-billion dollars for the "three violations" of his federal rights. ECF No. 1 at 3.

Plaintiff filed a Motion for Leave to File an amended complaint, seeking to add a claim for relief. ECF No. 20. Because the motion appears simply to clarify that Plaintiff seeks declaratory and injunctive relief in connection with the operation of the suicide prevention cells at WCI and therefore does not prejudice Defendants, the motion will be granted.

**B.      Defendants' Response**

In their Motion to Dismiss or for Summary Judgment, Defendants put forth the following facts. On December 3, 2019, Plaintiff refused to allow officers to place a cellmate in his cell with him. ECF No. 16-4 at 1 (Notice of Infraction). Plaintiff pleaded guilty to the rule violation at an adjustment hearing held on December 16, 2019. *Id*. at 6.

Officer Carr explains that Officer Layton, the author of the infraction written on December 3, 2019, attempted to get Plaintiff to cooperate by having restraints placed on him so that a cellmate could be put into the cell with him.[1] ECF No. 16-5 at 1, ¶ 4. Plaintiff refused several orders given by Officer Layton and Officer Carr engaged in conversation with Plaintiff in an effort to gain his compliance. *Id*. During the interaction Plaintiff showed Officer Carr "what appeared to be a razor blade in a drinking cup." *Id*. He ordered Plaintiff to "put down the cup" but Plaintiff ignored the order and "proceeded to drink from the cup." *Id*. Officer Carr feared that Plaintiff would swallow the razor blade and, in order to prevent him from serious self-harm,

---

[1] Another incident involving the attempt to place Joshua Littlewolf in a cell (4C-21) with Plaintiff occurred on December 5, 2019, at 11:53 a.m. ECF No. 16-19 at 10. The officers involved in that incident (J. Smith, R. Barnes, E. Gaumer, and D. Trial) are not named as Defendants in this complaint. A separate complaint concerns that incident, *Corporal v. Smith, et al.*, DKC 20-1193.

Officer Carr deployed a short burst of pepper spray to Plaintiff's face.  *Id*.  Plaintiff dropped the cup but continued to refuse orders to be restrained.  *Id*.  Two additional short bursts of pepper spray were deployed, but Plaintiff remained steadfast in his refusal.  *Id*.  Officer Carr notified "operations."  *Id*.

Upon learning of Plaintiff's refusal to comply with orders, Chief of Security Butler authorized a planned use of force[2] to remove Plaintiff from his cell.  ECF No. 16-7 at 1, ¶ 4.  Lt. Forney was, however, able to convince Plaintiff to allow hand restraints to be applied and Plaintiff was removed from his cell and evaluated by medical staff.  *Id*.  Lt. Forney contacted Ms. Gordon later that day to advise her that Plaintiff had threatened to swallow a razor blade.  *Id*. at ¶ 5.  Ms. Gordon authorized Plaintiff's placement in "Special Operations Housing" and for suicide precautions to be implemented.  *Id*.  The suicide precautions included placement in an observation cell, fifteen-minute welfare checks by staff, removal of all clothing, removal of all items in the cell, and issuance of a suicide prevention smock.  ECF No. 16-12 at 1, ¶ 4.  Suicide precaution status is used when an inmate "has exhibited an indication of actual or potential self-harm that identifies the offender as a candidate for protection."  ECF No. 16-13 at 3, ¶ 12.  Plaintiff was removed from this status two days later after Ms. Harold interviewed him and she determined it was safe to remove Plaintiff from that status.  ECF No. 16-12 at 2, ¶ 5; ECF No. 16-14 at 1, 7.

After Plaintiff was removed from his cell and placed on observation status, the drinking cup he displayed to Officer Carr was examined and it was discovered that the razor blade had been placed between the double-walled sections of the cup, "making it appear the razor blade was in the water when it was actually in the wall of the cup."  ECF No. 16-16 at 3 (Use of Force Report

---

[2] According to reports included in the Use of Force Report for December 3, 2019, a "Use of Force Team assembled" outside of Plaintiff cell while Lt. Forney spoke with Plaintiff.  *See* ECF No. 16-16 at 6, 14.

from Chief of Security Keith Arnold), *see also* ECF No. 18-1 at 1 (photograph of drinking cup). There is no indication in the reports as to when this fact was discovered.

Plaintiff was examined by Kaitlyn Bascelli, RN, for pepper spray exposure. ECF No. 16-16 at 20. She noted that Plaintiff claimed to be all right and that he was cooperative during the exam. *Id*. She also noted that his vital signs were within normal limits, his lungs sounded clear, and he exhibited no signs or symptoms of distress. *Id*. Plaintiff refused a decontamination shower, according to correctional officers. *Id*.

**C.     Plaintiff's Response**

Plaintiff states in his opposition that Defendant Carr maced him unjustifiably after he refused to be handcuffed for the purpose of having another inmate assigned to his cell. ECF No. 19 at 2-3. He claims that he was maced three times by Carr and suffered injuries of pain for 16 hours as well as stress and anxiety. *Id*. at 3, ¶¶ 7-8. Plaintiff explains that he did not attempt or threaten to harm himself at any time during his interaction with Carr and, because of Officer Carr's false report that Plaintiff had attempted to hurt himself, he was placed in a suicide prevention cell for two days. *Id*. at ¶¶ 9-10. According to Plaintiff, he was never a threat to anyone or to himself when Officer Carr maced him. *Id*. at 4, ¶ 13.

In his Motion for Partial Summary Judgment, Plaintiff reiterates that his claim concerns Officer Carr's alleged false statement that Plaintiff attempted to harm himself and that is why Carr maced him and resulted in his confinement to a suicide prevention cell for two days. ECF No. 21-1 at 3. The motion delineates facts that are undisputed regarding the lack of bedding, clothes, and other accoutrement Plaintiff maintains was required in order to avoid the imposition of cruel and unusual punishment against him. *Id*. at 4.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  (*Id.*) (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

## III.  DISCUSSION

A.  **Excessive Force Claim**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

7

to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force.  *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm.  *Id*. at 38.

The use of chemical agents may state an Eighth Amendment claim where it is used "in quantities greater than necessary or for the sole purpose of infliction of pain."  *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)) (emphasis omitted).  As this court has observed:

> The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D.Md. 1978).  It may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763.  Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind.  *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).
>
> Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent.  *See, e.g*., *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).  However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray

> have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. App'x. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

*Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626-27 (D. Md. 2015), *aff'd*, 644 *Fed. Appx.* 243 (4th Cir. 2016).

At issue here is Officer Carr's use of pepper spray on two occasions when Plaintiff refused to follow orders to submit to restraints and to cease what appeared to be an attempt to injure himself. Even assuming that Plaintiff did not threaten harm to anyone including himself, his refusal to comply with orders justifies the use of chemical agents to gain his compliance. The medical report that closely followed the use of pepper spray indicates that Plaintiff suffered no injury and appeared to be in no distress. Further, Plaintiff does not dispute that he declined a decontamination shower when it was offered. Under these circumstances it does not follow that pepper spray was deployed in an attempt maliciously to cause Plaintiff to suffer pain. Rather, the pepper spray was used to gain his compliance with an order and any continued discomfort Plaintiff experienced is easily attributed to his refusal of a decontamination shower. Defendants are entitled to summary judgment on this claim.

**B.     Conditions Claim**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind."

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Where an inmate was confined for six days in cells described as "shockingly unsanitary," the Supreme Court has held that the prison officials responsible for the inmate's confinement had fair warning that their specific acts were unconstitutional. *Taylor v. Riojas*, __ U.S. ___, 2020 WL 6385693, *1 (Nov. 2, 2020).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must

10

produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770).

Plaintiff was held in a suicide observation cell for approximately two days. He denies that he attempted to harm himself but does not explain why the double-walled cup he was using to drink water had a razor blade lodged between the two walls. An officer in Defendant Carr's position could have reasonably concluded that Plaintiff was attempting to hurt himself. While it is possible that Plaintiff's ruse should have been immediately evident, thereby foreclosing any further need for his confinement to an observation cell, his confinement did not cause a "serious or significant physical or emotional injury." *Odom*, 349 F. 3d. at 770. Plaintiff has not offered, nor has he forecast, any evidence to support a finding that he suffered an injury as a result of his temporary assignment to the cell. Defendants are entitled to summary judgment on this claim.

## IV.   CONCLUSION

The use of pepper spray against Plaintiff when he refused to obey orders and his subsequent assignment to a suicide observation cell did not violate his Eighth Amendment right to be free from cruel and unusual punishment. A separate Order granting Defendants' motion follows.

February 5, 2021

                             /s/
                             DEBORAH K. CHASANOW
                             United States District Judge

11